El Pueblo de Puerto Rico, demandante y apelado, v. Salvador Rivera Irizarry, acusado y apelante.

Núm. 11818.—*Sometido:* Abril 1, 1947. *Resuelto:* Abril 14, 1947.

*Leopoldo Tormes García,* abogado del apelante; *Hon. Procurador General Interino Luis Negrón Fernández, y Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Se acusó al apelante en la corte de distrito de haber vendido el 20 de julio de 1946, media libra de bacalao en 15 centavos, en violación de la Orden Administrativa número 68 del 30 de junio de 1946, promulgada por el Administrador General de Suministros de conformidad con la Ley núm. 228, Leyes de Puerto Rico, 1942, ((1) pág. 1269). El acusado fué convicto y apeló de la sentencia condenándolo a la pena de tres meses de cárcel y $50 de multa.

El acusado alega primeramente que la Orden Administrativa núm. 68 es nula. Arguye que la Ley núm. 228, bajo la cual se promulgó la Orden, es nula porque al establecer en ella el cargo de Administrador General de Suministros, la Legislatura violó la sección 37 de la Carta Orgánica, 48 U.S.C.A., sec. 774, que prohibe la creación por la Legislatura de un nuevo departamento ejecutivo.

El artículo 2 de la Ley núm. 228 crea una Administración General de Suministros, bajo la dirección de un Administrador General de Suministros, nombrado por el Gobernador con el consentimiento del Senado. El artículo 2 faculta al Administrador para dictar aquellas reglas y órdenes que crea necesarias para poner en vigor las disposiciones

de la Ley. Y el artículo 3 dispone en detalle para el establecimiento de precios máximos por orden del Administrador.

La Ley Federal de Emergencia Sobre Control de Precios no regía durante el período comprendido entre el primero y el 25 de julio de 1946. *Latoni* v. *Corte Municipal,* ante, pág. 140. En su consecuencia, el 30 de junio el Administrador General de Suministros promulgó la Orden General Administrativa núm. 68, adoptando por referencia todas las órdenes y reglamentos de la Oficina Federal de Administración de Precios en cuanto a las ventas de artículos de primera necesidad y disponiendo que las infracciones a dicha orden serían castigadas con multa no mayor de $5,000 y cárcel por no menos de tres meses ni más de dos años. El delito aquí imputado ocurrió el 20 de julio de 1946, mientras la Ley Federal no estaba en vigor, cubriendo dicho delito la Orden Administrativa.

Suponemos, sin decidirlo, que a pesar del art. 12 de la Ley núm. 228 y del caso de *Yakus* v. *United States,* 321 U.S. 414, puede atacarse en este procedimiento la validez de la Orden Administrativa. Sin embargo, no podemos convenir en que la Orden sea nula.

En *Irizarry* v. *Corte de Distrito,* 64 D.P.R. 94, 101, resolvimos que la Legislatura Insular puede adoptar por referencia reglamentos federales sobre precios, ya existentes. También resolvimos a las págs. 102–4 que la Legislatura puede adoptar por referencia reglamentos federales a promulgarse en el futuro. La teoría de esta última decisión fué que al así disponerlo la Legislatura válidamente "ha elegido al Administrador Federal como el funcionario administrativo que tendrá poder 'para ultimar los detalles' dentro de las amplias pero válidas normas establecidas por la propia ley" (pág. 102). Y dijimos a la pág. 104, citando *Ex parte Gerino,* 77 P. 166 (Calif., 1904), que "el poder de ultimar los detalles a veces es delegado válidamente aun a entidades privadas."

 La cuestión aquí envuelta es limitada. No tenemos que ver en este caso con el punto de si la Administración General de Suministros es un departamento ejecutivo. Más bien la cuestión es si la Legislatura ha establecido válidamente un delito que el acusado ha cometido. Como hemos visto, aun un individuo particular puede ultimar los detalles dentro de una norma válida fijada por la Legislatura. Por tanto no tenemos que investigar en cuanto a la capacidad oficial del Administrador o en cuanto a su *status* dentro del Acta Orgánica. La Legislatura creó el delito. El Administrador, ya le llamemos un funcionario o un ciudadano particular, tomó la acción para la cual estaba autorizado en virtud de la Ley núm. 228. Por tanto resolvemos que la violación de la Orden Administrativa constituyó un delito y no tiene pertinencia en este caso la cuestión de si la Administración es un departamento ejecutivo.

No podemos convenir con la contención del acusado de que el delito aquí imputádole no estaba definido por ley. El artículo 10(*a*) hace ilegal la venta de cualquier artículo en violación de cualquier regla u orden expedida bajo la Ley núm. 228. Y el artículo 13(*b*) dispone que cualquier persona que voluntariamente violare alguna disposición de la Ley será castigada con multa que no excederá de $5,000 y cárcel por un término no menor de tres meses ni mayor de dos años. En adición, el artículo 13(*b*) y las disposiciones de la Orden Administrativa fijando penalidades por violación a la misma son idénticas. Por tanto dejamos sin resolver por ser académica la cuestión en cuanto al poder del Administrador bajo la Ley núm. 228 para fijar penalidades.

 El acusado alega también que aunque el artículo 2(*c*) autoriza al Administrador a dictar reglas y órdenes, la Ley no dispone que tales reglas y órdenes tendrán fuerza de ley. Esta es una contención frívola. El artículo 10(*a*) expresamente hace ilegal la venta de cualquier artículo en violación de una orden o regla del Administrador.

Finalmente, afirma el acusado que el récord no contiene evidencia suficiente para sostener su convicción, ya que la Orden Administrativa no fué introducida en evidencia y los tribunales no pueden tomar conocimiento judicial de la misma. No hacemos un alto para determinar si las cortes pueden tomar conocimiento judicial de una Orden estableciendo precios específicos. Aquí la orden simplemente adoptó por referencia todos los reglamentos de la Oficina de Administración de Precios, incluyendo uno prohibiendo la venta de bacalao a más de 23 centavos libra. Y una vez que aparecen publicados en el Federal Register, las cortes pueden tomar conocimiento judicial de tales reglamentos federales. *United States ex rel. Brown* v. *Lederer,* 140 F.2d 136, 139 (C.C.A. 7, 1944), *certiorari* denegado, 64 S.Ct. 1047. En su consecuencia, todo lo que se nos pide que aquí hagamos es tomar conocimiento judicial de que durante el interregno de 25 días cuando no estaba en vigor la Ley Federal, los reglamentos promulgados bajo la misma fueron adoptados por referencia en virtud de la ley insular. Esto fué proclamado oficialmente por el Gobernador y fué un hecho tan notorio y de conocimiento tan general en esta comunidad que las cortes pueden tomar conocimiento judicial del mismo. *Pueblo* v. *Díaz,* 62 D.P.R. 136, 140; véanse *De Castro* v. *Junta de Comisionados,* 59 D.P.R. 676, 684–86; *Ballester* v. *Tribunal de Apelación de Contribuciones,* 61 D.P.R. 474, 507–9; *Tugwell, Gobernador,* v. *Corte,* 64 D.P.R. 220, 246.
*La sentencia de la corte de distrito será confirmada.*